402    APPELLATE COURTS OF ILLINOIS.

Frank Parmelee Co. v. George W. Jackson., Inc., 191 Ill. App. 402.

## Frank Parmelee Company, Plaintiff in Error, v. George W. Jackson, Inc., Defendant in Error.

### Gen. No. 19,483.

VENDOR AND PURCHASER, § 344*—recovery of money paid for guaranty policy of title. Where grantor's first deed conveyed an entire lot including an intervening space of 11 inches between the north 100 feet and the south 65 feet, conveyed in grantor's second deed, and the purchaser agreed to waive the survey and accept a guaranty policy of title, held, under the evidence, that the transaction proceeded on the theory that the policy would be issued to cover the entire property as described in the first deed, including the 11 inches, so that plaintiff was entitled to recover a fair and reasonable price paid to secure such a policy, upon defendant's refusal to provide one for the entire property.

Error to the Municipal Court of Chicago; the Hon. JOSEPH Z. UHLIR, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Reversed and judgment here. Opinion filed February 4, 1915.

SHERIFF, DENT, DOBYNS & FREEMAN, for plaintiff in error.

FOREMAN, LEVIN & ROBERTSON, for defendant in error.

MR. JUSTICE PAM delivered the opinion of the court.

This is a suit brought by the Frank Parmelee Company, a corporation, hereinafter referred to as the plaintiff, against George W. Jackson, Inc., hereinafter referred to as the defendant, to recover $353.80, the price paid by the plaintiff to the Chicago Title & Trust Company for a guaranty policy of insurance issued by it, guarantying title of the defendant in and to a certain piece of real estate known as "Lot 6 in Blanchard's Subdivision of Block 4, in School Section Addition to Chicago," situated in the city of Chicago, county of Cook, State of Illinois, for which the plaintiff paid defendant $75,000.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Frank Parmelee Co. v. George W. Jackson., Inc., 191 Ill. App. 402.

The controversy which led to the beginning of this action arose out of a real estate transaction between the plaintiff and the defendant. Plaintiff purchased from the defendant certain property situated in the city of Chicago. Defendant, in conveying to the plaintiff title to the property that was purchased, executed two deeds which we shall hereafter designate as the first and second deeds, the description in the first deed being as follows:

"Lot six (6) in Blanchard's Subdivision of Block four (4), in School Section Addition to Chicago, in Section sixteen (16), Township thirty-nine (39) North, Range fourteen (14) East of the Third Principal Meridian, situated in the City of Chicago, County of Cook and State of Illinois."

The second deed contained the following description:

"The north one hundred (100) feet of Lot six (6) in Blanchard's Subdivision of Block four (4) in School Section Addition to Chicago; the West half of the South sixty-five (65) feet of Lot six (6) in Blanchard's Subdivision of Block four (4) in School Section Addition to Chicago; the East half of the South sixty-five (65) feet of Lot six (6) in Blanchard's Subdivision of Block four (4) in School Section Addition to Chicago, all in Section sixteen (16), Township thirty-nine (39) North, Range fourteen (14) East of the Third Principal Meridian."

Part of the record in the case is a written stipulation of facts. This stipulation shows that Lot 6 aforementioned is a tract of land fronting on the north on Jackson boulevard, on the south on Boston avenue; that Lot 6 is otherwise known as Nos. 751-753-755 West Jackson boulevard, and 750-752-754 Boston avenue.

The only oral evidence given was that of Fred Norlin, a surveyor, who testified that the length of the lot conveyed by the first deed was 165 feet 11 inches, and the width 50 feet 6¼ inches; that there was on this lot one building, viz., a factory building three stories high, of brick construction; that the said building was 148 feet 10 inches long, and 49 feet 6¼ inches wide; and that

the north front of the building came right up to the south line of Jackson boulevard.

The second deed conveyed the north 100 feet of Lot 6 in Blanchard's Subdivision of Block 4, etc., and the west and east one-half of the south 65 feet of Lot 6 in Blanchard's Subdivision of Block 4, etc. The second deed transferred only 165 feet of land. The testimony of Mr. Norlin showed that Lot 6 contained 165 feet 11 inches. The second deed omitted to convey the 11 inches between the north 100 feet and the south 65 feet mentioned in the second deed. The first deed, however, conveyed the entire Lot 6, and was therefore inclusive of the 11 inches omitted in the second deed. The building covered this 11 inches. The record is barren of any formal written contract having been entered into by the parties for the sale of this land. We must rely upon the stipulation of facts, the testimony of Mr. Norlin, and the correspondence which passed between the parties, and the deeds themselves, to determine what contract had been entered into between the parties with reference to the sale of this land.

At the time of the trial the attorneys for defendant admitted that up to the delivery of the warranty deeds on or about September 1st, Mr. Milton J. Foreman was agent for the defendant in connection with the sale of the real estate in question in this case, and that during this period and thereafter up to and including the date hereof, Mr. A. R. Sheriff and the firm of Sheriff, Dent, Dobyns & Freeman were agents of the plaintiff. In a letter dated August 1, 1911, Mr. Milton J. Foreman, on behalf of the defendant, sent Mr. Sheriff on behalf of the plaintiff, a continuation of abstract of title to the north 100 feet of Lot 6, and to the east and west one-half of the south 65 feet of same lot. On August 7, 1911, the Chicago Title & Trust Company gave an opinion of title to the north 100 feet and the south 65 feet of Lot 6, in which it found that the defendant had a good title in said property, subject,

among other things, "to the rights or claims of parties in possession and not shown of record and *questions of survey.*" (Italics ours.) It is evident from the record that these opinions of title must at once have been sent to Sheriff, Dent, Dobyns & Freeman, for on August 8th we have a letter by that firm, addressed to Mr. Foreman, which reads as follows:

"August 8, 1911.

Col. Milton J. Foreman,
822 First Natl. Bk. Bldg.,
Chicago, Ill.
Dear Sir:—

Referring to the proposed conveyance from George W. Jackson, Incorporated, to the Frank Parmelee Company of the real estate known as 753 and 755 West Jackson boulevard, we beg to say that we will waive the survey and accept a guaranty policy in the sum of $75,000. The policy should be issued to Frank Parmelee Company.

. A letter from Chicago Title & Trust Company under date of August 7th, is herewith returned.

Yours very truly,
Sheriff, Dent, Dobyns & Freeman,
By L. L. Dent."

This letter, it will be seen, has reference to the letters from the Chicago Title & Trust Company of August 7th and which the record shows were the opinions of title hereinabove referred to. This letter clearly indicated that the question of survey set forth in the opinion given by the Chicago Title & Trust Company was waived under the condition that a guaranty policy in the sum of $75,000 would be secured by the defendant from the Chicago Title & Trust Company in favor of the plaintiff.

The next step in the transaction, as shown by the record, was the passing of the deeds, viz., the first and second deeds, both dated August 18, 1911. There was no oral evidence submitted as to what took place between the parties between the sending of the letter

dated August 8th and the passing of the deeds. That, however, there was an obligation of some kind incurred is clearly evident from the fact that on September 13, 1911, Mr. Foreman addressed a letter to Mr. Sheriff wherein he referred to a letter addressed by the Chicago Title & Trust Company to Messrs. Foreman, Levin & Robertson under same date. This letter was written after both deeds that passed between the parties had been placed of record, and finds title in plaintiff to the north 100 feet and to the south 65 feet of Lot 6, and the balance in Joseph Hartmann, his heirs or devisees. The letter of August 8th previously referred to waived the question of survey upon the issuance of a guaranty policy. If a survey had been made at the time of the transfer of the property in question, it would have been discovered that Lot 6 was 165 feet 11 inches long; but the letter of August 8th explains why the survey was not made, viz., plaintiff accepted in lieu thereof a guaranty policy for $75,000. It is fair to presume, therefore, that it was by reason of acting favorably on the letter of August 8th sent to the defendant's agent by the plaintiff that the plaintiff was endeavoring to secure the guaranty policy, and that as a result of this endeavor, the opinion of title in the letter of September 13th was given by the Chicago Title & Trust Company to Mr. Foreman as agent of the defendant. The acceptance of the offer of August 8th may be further inferred from the admissions by defendant in its affidavit of merits, wherein, while it denies that defendant agreed to supply plaintiff with a policy of insurance on Lot 6, yet it admits that it agreed to supply plaintiff with a policy of insurance on the property described in the second deed. This is also admitted in the stipulation of facts already adverted to; and furthermore, in the letter of November 11, 1911, written by Mr. Foreman to Mr. Sheriff, wherein it is stated that it had agreed to furnish a guaranty policy covering the property mentioned in

the opinion of title already set forth in the letter of August 7th by the Chicago Title & Trust Company to defendant's attorneys. From the correspondence and the action of the parties there can be no doubt that the transaction proceeded upon the theory that the guaranty policy would be issued, the only question being whether the policy was to cover the property described in the first deed or the property described in the second deed as the north 100 feet and the south 65 feet of Lot 6.

In the course of communications between the parties, counsel asked for the tax receipts, and these were supplied by defendant's representatives. The tax receipts for 1909 were two in number, and covered the north 100 feet and the south 65 feet of Lot 6, respectively. The tax receipt of July 15, 1910, was for taxes on the property described as Lot 6, and did not make any distinction between the north 100 and the south 65 feet. The property therein is treated as one piece. These tax receipts were furnished by the defendant and taxes receipted for in these receipts were paid by the defendant before the deeds were passed.

The three-story brick building covered the lot from the north end to within 12 feet of the south end, inclusive of the 11 inches in the center which was discovered by the survey as not being covered by the second deed, but was included in the first deed. It is fair to presume, therefore, that in conveying Lot 6 with the building thereon, without the exact dimensions being set forth in the description, that the defendant not only intended to but did convey 165 feet 11 inches. When on August 8th an offer was made of $75,000 upon condition of defendant's furnishing plaintiff a guaranty policy, and as a result of which a deed was given covering Lot 6, there is no room left for any doubt that plaintiff expected to receive a guaranty policy on Lot 6, and that it had the right to receive same from the defendant; that defendant, by acting upon said letter

and conveying the property and receiving $75,000, in view of the facts and circumstances in evidence in this case, led the plaintiff to believe that it would furnish such a guaranty policy covering Lot 6 which would protect the title of the plaintiff as to the 11 inches not included in the second deed, and this notwithstanding the fact that a second deed was given which conveyed only the north 100 and the south 65 feet. If it had been intended that only such property was guarantied against, there was no necessity for the first deed. We believe, the defendant having failed to furnish a guaranty policy covering Lot 6, plaintiff had the right to secure same from the Chicago Title & Trust Company. The stipulation of facts offered in evidence admitted that the price for the guaranty policy covering Lot 6 as described in the first deed was fair and reasonable. The court therefore incorrectly applied the law to the facts. In law, under the facts and circumstances in evidence, plaintiff was entitled to a guaranty policy covering Lot 6, and the judgment of the court should therefore have been for $353.80. The case must therefore be reversed. There being no dispute on the facts, the case will not be remanded but judgment entered here for $353.80 in favor of the plaintiff.

*Judgment reversed and judgment here for $353.80 and costs of suit.*